IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEFFERY NATHINIEL PAGAN,** : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **COUNTY OF CHESTER,** *et al.*, : <br> Defendants. : | **CIVIL ACTION NO. 23-CV-3835** |

**MEMORANDUM**

**PEREZ, J.**                                                                                                   November 3rd, 2023

Jeffery Nathiniel Pagan, an inmate currently confined at Chester County Prison ("CCP"), has filed a *pro se* Complaint asserting civil rights violations. Named as Defendants are the County of Chester, Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson. All Defendants are named in their individual and official capacities. Pagan also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Pagan *in forma pauperis* status and permit him to proceed on his claims against Sergeant Gunthrie. Pagan's claims against the remaining Defendants will be dismissed without prejudice. Pagan will be granted the option of proceeding only on those claims that pass statutory screening, or filing an amended complaint.

**I.      FACTUAL ALLEGATIONS**[1]

In a general manner, Pagan claims that from August 20, 2023 to September 8, 2023, while he was housed on the restricted housing unit ("RHU") at CCP, the named Defendants ignored him and "continued the use of customs" that violated his rights, refusing to act or change

---

[1] The allegations set forth in this Memorandum are taken from Pagan's Complaint and public records from which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the pagination supplied by the CM/ECF docketing system.

the "customs of abuse and neglect." (Compl. at 6.)  He asserts that these Defendants had knowledge of the customs and were deliberately indifferent to his mental health and safety.  (*Id.*)  According to Pagan, Defendants understaffed CCP, undertrained its employees, and turned a blind eye to his complaints for non-penological purposes.  (*Id.*)

Pagan further asserts that he was denied recreation on nineteen of the twenty days that he was housed in the RHU by Defendant Gunthrie, as well as by the following individuals who were not named as defendants: C.O. Roundtree, C.O. Gudan, C.O. Hirsch, and C.O. Mitchell.  (*Id.* at 8.)  Pagan claims that "[t]he listed Chester County Prison employees constantly attacked me verbally due to the nature of my crime and [I] became a target of abuse."  (*Id.*)  On August 25, 2023, Pagan was permitted yard time from 6-7 a.m. after begging an unidentified C.O., and was told that if he was to get jumped due to his crime, "to not expect help as soon as something would happen."  (*Id.*)  Pagans avers that during medication time that same day, after asking Pagan whether he had gone to yard, C.O. Hirsch informed him that he would not get yard time again.  (*Id.*)  After protesting and pleading for answers, Pagan was told by C.O. Hirsch "you know what type [of] case you have."  (*Id.*)  Pagan alleges that, later that morning, C.O. Hirsch "opened my cell door and told me to kill myself you fucking pedophile and to do it soon so I can do the world a favor, for the children that I could potential[ly] target will be safe from me."  (*Id.*)  C.O. Hirsch is alleged to have laughed and shut the cell door.  (*Id.*)

Pagan also claims that on August 25, 2023, he reported to Counselor Iswalt, who is not named as a defendant, that he was repeatedly denied a request for psych, that he was the target of abuse, and that his extended confinement due to the denial of yard time caused his mental stability to decline.  (*Id.* at 10.)  He also reported the threats and encouragement to commit suicide from the C.O.s due to the type of his charges.  (*Id.*)  Pagan further contends that on

2

August 29, 2023, "while being escorted to Counselor Iswalts office by him, I informed him that I was being denied yard and how being constantly confined was detrimental to the stability of my mental health and was told there is nothing he could do." (*Id.* at 8.)  Pagan reiterated while in Counselor Iswalt's office that he needed help and that he was targeted by multiple C.O.s, but "still was refused help." (*Id.*)  Pagan further avers that on September 6-8, 2023, he "repeatedly asked the psych via psych nurse going cell to cell on J-Block to talk to someone and wasn't seen."  (*Id.* at 9.)

According to Pagan from September 1, 2023 until September 8, 2023 "when the verbal and mental abuse was at the highest," he asked C.O. Hirsch, C.O. Mitchell, C.O. Guldan, C.O. Suah, and Sergeant Gunthrie to contact psych, but his requests were denied.  (*Id.* at 10.)  Pagan contends that C.O. Mitchell called him a "diaper sniper every time we interacted." (*Id.*)  Pagan also asserts that during searches three times each day, he was told by the "listed C.O.s" that he should hang himself, jump from the top of his bed onto he head, or to ram his head repeatedly into the wall.  (*Id.*)

Pagan claims that as a result of the named Defendants' actions, he suffered, *inter alia*, severe psychiatric trauma.  (*Id.* at 7.)  Pagan seeks damages, as well as injunctive relief including forcing "defendants to retrain, and maintain procedures, policy and customs that protect inmates['] mental health and the safety of all inmates who are in [the] RHU or suffer from severe depression."  (*Id.* at 11.)[2]

---

[2] The Court notes that Pagan checked a box to indicate that he was a convicted and sentenced state prisoner at the time of the filing of the Complaint. (*See* Compl. at 6.)  The publicly available docket for Pagan's state court criminal proceedings indicates that Pagan entered a guilty plea on July 10, 2023, and that he is scheduled to be sentenced on October 18, 2023.  *See Commonwealth v. Pagan*, CP-15-CR-0001382-2022 (C.P. Chester).  Because he was not yet sentenced at the time of the events at issue, Pagan is classified as a pretrial detainee for purposes of the alleged constitutional violations.  *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007).

## II.     STANDARD OF REVIEW

The Court grants Pagan leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Pagan is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).

---

[3] Because Pagan is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

**III.    DISCUSSION**

Pagan asserts claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not permit recovery for vicarious theories of liability, and liability cannot be predicated solely on the operation of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). This means superior officers may not be held liable for civil rights violations based entirely on acts taken by their subordinate officers. Because the personal involvement of each defendant in the alleged constitutional violation is a required element in a § 1983 action, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Id.*

Here, Pagan alleges that from August 20, 2023 until September 8, 2023, while housed on the RHU, he was denied access to the recreation yard, denied access to mental health care, and verbally harassed, by various CCP employees. Although Pagan has described actions by various CCP employees that allegedly violated his rights, he has named only the County of Chester, Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson as Defendants. However, Pagan has not alleged any basis for concluding that Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, and Sergeant Johnson directly engaged in harassment, denial of yard time, or denial of medical

care.[4]  Rather, the Court understands Pagan to instead assert claims against Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, and Sergeant Johnson in their supervisory capacities.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).[5] "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316.

Pagan has presented only conclusory allegations that Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, and Sergeant Johnson "continued the use of customs" that violated his rights, and refused to act or change the "customs of abuse and neglect" to the detriment of his mental health.  (*See* Compl. at 6.)  However, Pagan has not referenced a policy or custom with respect to the alleged constitutional violation, much less has Pagan alleged sufficient facts for the court to conclude that any policy or custom caused the constitutional

---

[4] As discussed more fully below, Pagan alleges that Sergeant Gunthrie was one of the CCP employees who denied him yard time while in the RHU and denied his repeated requests for mental health care.  (*See* Compl. at 8, 10.)

[5] "Failure to" claims, such as a failure to train, failure to discipline, or a failure to supervise are generally considered a subcategory of policy or practice liability.  *Barkes*, 766 F.3d at 316-17.

violation, or that Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, and Sergeant Johnson participated in the constitutional violations, directed others to so, or, as the persons in charge, had knowledge of and acquiesced in the alleged violations.  Instead, Pagan appears to draw his conclusion that Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, and Sergeant Johnson are responsible merely based on their supervisory roles.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); see Zigler v. Warren, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

    Pagan also checked boxes on the form Complaint to indicate that he asserts claims against Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson pursuant to § 1983 in their official capacities.  (See Compl. at 3-5.)  Official capacity claims are indistinguishable from claims against the entity that employs the officials.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit

7

against the entity." *Id.* Thus, Pagan's claims against Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson in their official capacities are, in essence, claims against Chester County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g., Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

To the extent Pagan seeks damages from Chester County, as well as Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson in their official capacities, he has failed to allege facts that support *Monell* liability. Pagan has not pled a municipal policy or custom with respect to the alleged constitutional violations, that such policy or custom caused the constitutional violations, or municipal failures amounting to deliberate indifference.  Accordingly, any official capacity claims against Warden Howard Holland, Deputy Warden Ocie Miller, Major Morgan Taylor, Sergeant Gunthrie, and Sergeant Johnson, and any *Monell* claims against Chester County, are not plausible as alleged.

To the extent that Pagan seeks to present a claim against Sergeant Gunthrie for the denial of yard while he was housed in the RHU, such claim passes statutory screening.  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.[6]  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.  *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Courts in this Circuit have held that a denial of recreation time for short periods does not constitute the type of serious deprivation that amounts to objective punishment.  *See, e.g.,*

---

[6] The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees, while the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

9

*Fortune v. Hamberger*, 379 F. App' x 116, 122 (3d Cir. 2010) (denial of adequate exercise for a period of fifteen days not "sufficiently serious" to implicate the Eighth Amendment); *Bacon v. Minner*, 229 F. App'x 96, 99 (3d Cir. 2007) (forty-five minutes of exercise per week not constitutionally infirm); *c.f. Carroll v. Delaware Cnty. of Pennsylvania*, No. 22-1720, 2023 WL 2868020, at *16 (E.D. Pa. Apr. 10, 2023) (lack of exercise may constitute cruel and unusual punishment where movement is denied and muscles are allowed to atrophy). The Third Circuit also has acknowledged that when considering whether a deprivation of outdoor exercise amounts to a substantial deprivation, courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation. *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Taking Pagan's allegations as true as the Court is obligated to do at this stage of the litigation, Pagan has alleged a sufficient basis from which the Court could infer that C.O. Gunthrie violated Pagan's Fourteenth Amendment rights by denying him yard time while housed in the RHU. Accordingly, Pagan will be permitted to proceed on this claim against Sergeant Gunthrie.

Similarly, Pagan will be allowed to proceed on his deliberate indifference to medical needs claim against Sergeant Gunthrie based on his allegations that Sergeant Gunthrie denied his repeated requests for mental health care while housed on the RHU. (*See* Compl. at 10.) To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F.

App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (internal citations and quotations omitted). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). At the statutory screening stage, Pagan's allegations raise a plausible inference that Sergeant Gunthrie was deliberately indifferent to a serious medical need.

IV. **CONCLUSION**

As set forth more fully above, Pagan's claims for denial of yard time and deliberate indifference to his medical needs against Sergeant Gunthrie pass statutory screening. However, Pagan's claims against Chester County, Warden Howard Holland, Deputy Warden Ocie Miller,

Major Morgan Taylor, and Sergeant Johnson will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Considering Pagan's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects in those claims. In the alternative, Pagan may advise the Court that he seeks to proceed only on the claims that pass statutory screening.

An appropriate Order follows.

BY THE COURT:

_____
**MIA R. PEREZ, J.**